IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORNAN NWANSI, et al.,

        Plaintiffs,

    v.

CONDOLEEZZA RICE, Secretary of State of the United States, et al.,

        Defendants.

NO. C 06-0003 TEH

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

        This matter came before the Court on June 12, 2006 on Defendants' motion to dismiss Plaintiffs' complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). Initially, the motion was based on either of two grounds: the doctrine of consular nonreviewability or, alternatively, Plaintiffs' failure to exhaust their administrative remedies. On April 27, 2006, just one day before filing of this motion to dismiss, the United States Citizenship and Immigration Services ("USCIS") reaffirmed Mr. Nwansi's I-130 Petition for Alien Relative ("I-130 petition").[1] Accordingly, Defendants' motion for dismissal on the ground of non-exhaustion is moot. Having carefully considered the Parties' arguments and the record, the motion to dismiss is hereby GRANTED pursuant to the doctrine of consular nonreviewability.

**FACTUAL BACKGROUND**

        On December 4, 2002, Plaintiff Ornan Nwansi ("Mr. Nwansi"), a naturalized citizen of the United States, married Plaintiff Gloria Nwansi ("Mrs. Nwansi"), a citizen of Nigeria. Approximately

---

[1] On March 1, 2003, the U.S. Immigration and Naturalization Service (INS) was abolished and its functions transferred to U.S. Citizenship and Immigration Services (USCIS), a division of the newly constituted Department of Homeland Security (DHS).

seven months later, on July 21, 2003, Mr. Nwansi filed an I-130 petition with USCIS to classify Mrs. Nwansi as his spouse. On September 16, 2004, USCIS approved the petition and forwarded it to the U.S. Consulate in Lagos, Nigeria ("the Consulate"). Mrs. Nwansi then applied to the Consulate for an immigrant visa based on the approved petition.

This sequence of events follows the standard process for bringing an alien spouse to live in the United States: first, the U.S. legal resident or citizen spouse must petition USCIS for recognition of the marital relationship. If USCIS approves the petition, it is forwarded to the consulate in the alien spouse's respective region. The alien spouse must then apply to the consulate for an immigrant visa to enter the United States.

It is at this point that Plaintiffs' efforts to have Mrs. Nwansi admitted to the United States hit a snag. Pursuant to State Department guidelines advising consular "review," the Consulate interviewed Mrs. Nwansi and, as a result, decided not to issue her an immigrant visa and to return Mr. Nwansi's I-130 petition to the USCIS for review and possible revocation. In an unsigned letter to Mrs. Nwansi dated May 6, 2005 ("the OF-194"), the Chief of the Immigrant Visa Unit at the Consulate offered the following explanation:

> The reason for our action is: Based on poverty guidelines, neither sponsor nor co-sponsor can support their own families. Furthermore, applicant could not demonstrate that she had a sincere and lasting relationship with her husband since 2001.

On August 19, 2005, USCIS issued a notice to Mr. Nwansi indicating it had received his returned I-130 petition. On January 27, 2006, USCIS issued a Notice of Intent to Revoke the approved I-130 petition ("Notice") and provided Mr. Nwansi thirty days to respond. The Notice contained additional evidence and specific findings by the Consulate in support of its earlier decision not to issue Mrs. Nwansi a visa and to return the I-130 petition to USCIS. The evidence and findings in this Notice had not been previously provided to Plaintiffs. Mr. Nwansi filed a timely response. On April 27, 2006, one day before Defendants filed the instant motion, USCIS reaffirmed its initial decision to grant Mr. Nwansi's I-130 petition and again forwarded it to the Consulate for a decision as to whether to grant or deny Mrs. Nwansi's visa application. The Consulate has not yet acted on the visa application.

2

Plaintiffs allege causes of action for declaratory and injunctive relief, and for mandamus. Defendants argue that all of Plaintiffs' claims should be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) because they fall within the doctrine of consular nonreviewability.

**LEGAL STANDARD**

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Federal subject matter jurisdiction must exist at the time the action is commenced. *Morongo Band of Mission Indians v. Calif. State Board of Equalization*, 858 F.2d 1376 (9th Cir. 1988). However, lack of subject matter jurisdiction may be raised at any time, and if the parties do not identify a potential problem, it is the court's duty to address the issue sua sponte whenever it is perceived. *See Rosales v. United States*, 824 F.2d 799, 803 n.4 (9th Cir. 1987) (citing Fed. R. Civ. P. 12(h)(3)).

A 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint. *Thornhill Publishing Co. v. General Tel. & Electronics*, 594 F.2d 730, 733 (9th Cir. 1979); *Mendez v. Gearan*, 947 F. Supp. 1364, 1366 (N.D. Cal. 1996). Although lack of subject matter jurisdiction is an affirmative defense, the burden of proof in a 12(b)(1) motion is on the party asserting jurisdiction. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Therefore, although the complaint is to be construed liberally, argumentative inferences favorable to the pleader will not be drawn, and the court will presume a lack of jurisdiction until the pleader proves otherwise. *Id.* An action should be dismissed for lack of subject matter jurisdiction only if it is clear that the jurisdictional deficiency cannot be cured by amendment. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987).

**DISCUSSION**

As noted above, Defendants argue that Plaintiffs' complaint should be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) because all of the claims asserted fall within the doctrine

3

of consular nonreviewability. In general, that doctrine prohibits judicial review of consular officers' decisions to grant or deny visas. *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986)*; Ventura-Escamilla v. INS*, 647 F.2d 28, 30 (9th Cir. 1981). It is further understood to apply to all discretionary decisions of consular officers. *See Patel v. Reno*, 134 F.3d 929, 932  (9th Cir. 1997) (emphasizing that plaintiffs were not challenging a decision within the discretion of the consular officer and implying that otherwise jurisdiction would not exist). Indeed, the doctrine of consular nonreviewability has been heavily criticized for the almost absolute power it affords consular officers over visa issuance. *See e.g.* Sam Bernsen, *Consular Absolutism in Visa Cases*, 63 Interpreter Releases 388 (1986). Defendants argue that Plaintiffs' complaint seeks review of discretionary decisions by the Consulate and therefore is nonreviewable under the doctrine.

Plaintiffs respond that the doctrine is inapplicable here because the consular decisions in this case constituted an impermissible "suspension." Plaintiffs read the Ninth Circuit's decision in *Patel* as carving out an exception to the doctrine which allows for review of impermissible suspensions. *See Patel*, 134 F.3d 929 (granting mandamus where the Consulate's "suspension" of a visa was impermissible). Defendants dispute Plaintiffs' characterization of the Consulate's action as a "suspension," arguing that the Consulate did not suspend but in fact refused Mrs. Nwansi's application. However, even if Plaintiffs are correct in asserting that the action was a suspension and not a refusal as Defendants argue, Plaintiffs' reliance on *Patel* is misguided.

In *Patel*, the United States Consulate in Bombay, India had failed to resolve the pending immigrant visa applications for eight years, and indeed, affirmatively "refused to act" on the pending applications. Government counsel in the case expressly conceded that the relevant officials were "holding the visa applications in abeyance." *Patel*, 134 F.3d. at 932. In reaching the defendants' action, the Court held that the consulate's "holding in abeyance" violated a mandatory duty under 22 C.F.R. § 42.81 to "issue or refuse" a properly completed and submitted visa application.

> Normally a consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review. *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986); *Ventura-Escamilla v. INS*, 647 F.2d 28, 30 (9th Cir. 1981). However, when the suit

4

challenges the authority of the consul to take or fail to take an action as opposed to a decision within the consul's discretion, jurisdiction exists. *Patel*, 134 F.3d at 931-932.

Thus, *Patel* simply holds that where a consular officer has a *nondiscretionary* duty to act but refuses to do so, the court can grant mandamus relief and force the consulate to issue a decision (though importantly, in issuing the writ, the court may not direct the agency *how* to act). It does not alter the scope of the doctrine with respect to discretionary consular visa decisions.

Plaintiffs mistakenly equate the Bombay Consulate's "holding in abeyance" (an impermissible suspension) with the Consulate's permissible actions in this case, actions which are expressly within the discretion of consular officers as evidenced by the applicable regulations. *See* 22 C.F.R. § 42.43. Crucially, the *Patel* Court explicitly recognized that not all "suspensions" are impermissible. Suspension is authorized, the Court held, so long as "the consulate also returns the petition to the INS [now USCIS] for a final disposition," i.e., acts within its discretion. *Patel*, 134 F.3d at 932. That is precisely what happened in this case: the Consulate decided not to issue Mrs. Nwansi an immigrant visa and returned Mr. Nwansi's I-130 petition to the USCIS.

Also, significantly, Defendants have not unreasonably delayed Mrs. Nwansi's visa application nor have they placed it in a state of limbo similar to the one that motivated the *Patel* Court, though Plaintiffs suggest that potentiality.[2] *See also Raduga USA Corp. v United States Dep't of State*, 2005 U.S. Dist. LEXIS 22941 (S.D. Cal. May 24, 2005) (granting mandamus based on the Consulate's "unreasonable" four year delay in processing plaintiffs' visa applications). By returning Mr. Nwansi's I-130 petition to USCIS, the Consulate acted within its discretion. In short, because the Consulate has not failed to perform a mandatory duty, this case does not qualify under *Patel*'s "impermissible" suspension exception.

Plaintiffs appear to be under the mistaken impression that *Patel*'s very narrow conception of "impermissible" suspension extends to include instances where a consular officer's *discretionary* action allegedly violates State Department guidelines. Such a misunderstanding would explain Plaintiffs' extensive discussion of how the consular actions here violate State Department

---

[2] *See infra* n.5 and accompanying text.

5

guidelines. However, because the actions are discretionary and not mandatory as in *Patel*, the doctrine prohibits judicial review. Moreover, even if the Court were inclined to accept Plaintiffs' overbroad reading of *Patel*, Plaintiffs have failed to convince the Court that there are sufficient grounds on which to find that the Consulate violated State Department guidelines pertaining to suspension of a visa application.

Plaintiffs argue that the Consulate failed to properly comply with Note 1 to Part 42.43 of Chapter 9 of the State Department's Foreign Affairs Manual,[3] which states, "Consular officers should bear in mind that the [State] Department considers the approval of a visa petition [by USCIS] prima facie evidence of the [marital] relationship between the petitioner and the beneficiary. … Therefore, it is the consular officer's responsibility to review, not to readjudicate petitions." Essentially, Plaintiffs ask the Court to interpret the Consulate's action here as constituting an impermissible "readjudication" and, thereby, to find that the Consulate's decision not to issue Mrs. Nwansi an immigrant visa and to return her husband's I-130 petition was unlawful on procedural grounds. However, the line between permissible "review" and impermissible "readjudication" is far from bright,[4] and Plaintiffs fail to offer any persuasive explanation or argument as to where the line should fall or why the actions here constitute a "readjudication." Plaintiffs merely point to a single line in the OF-194 which states, "applicant could not demonstrate that she had a sincere and lasting relationship with her husband." From this, Plaintiffs would have the Court find that the Consulate did not consider approval of the petition to be prima facie evidence, but rather impermissibly readjudicated the I-130 petition. This is totally inadequate.

Weaker still is Plaintiffs' argument that the Consulate failed to meet the "minimum evidentiary standards" indicated by Note 2.2 to Part 42.43. Here, Plaintiffs' claim is again based on the OF-194, but their reliance on that document is unjustified. Nowhere do Plaintiffs point to any regulation requiring the Consulate to present all of its relevant evidence for a decision to "suspend

---

[3] The Foreign Affairs Manual (FAM) guides the State Department in performing its duties. It is a compilation of the Immigration and Nationality Act, *8 U.S.C. § 1181, et seq.*, and of Departmental regulations, interpretations and procedural notes.

[4] *See generally* Anderson & Gifford, *Consular Discretion in the Immigrant Visa-Issuing Process*, 16 San Diego L. Rev. 87, 152 (1978) (finding that "[FAM] guidelines are often vague and ill-defined.").

6

and return" in the related OF-194. Nor do Plaintiffs suggest any reason why the Consulate would have done so here or why the Court should accept the OF-194 as an appropriate, let alone exclusive, measure of the Consulate's evidence in this case. Thus, it is impossible to conclude based on the OF-194 alone that the Consulate's evidence is insufficient. Furthermore, Plaintiffs do not challenge the sufficiency of the Consulate's evidence as set forth in the Notice of Intent to Revoke. Instead, they argue that the Court should ignore this evidence in considering the sufficiency of the evidence *in toto* because the Consulate's failure to disclose it in the OF-194 denied Plaintiffs of notice and an opportunity to be heard. However, the Consulate has no express duty to offer such notice and opportunity to be heard.

Plaintiffs also complain that, as a general matter, the applicable regulations governing consular visa issuance violate due process because they do not require notice and an opportunity to be heard in consular decisions to "suspend and return." Plaintiffs argue that providing such due process is especially important because the regulations allow for a single visa application and related I-130 petition to be "suspended and returned" a potentially unlimited number of times. Plaintiffs refer to this potentiality as a "vicious cycle of return [of petitions by consular officers] and reaffirmation [by USCIS]."[5] In response, the Court simply notes that the doctrine of consular nonreviewability was born out of the judiciary's recognition of the virtually complete legislative power of Congress over the admission of aliens. *See Li Hing*, 800 F.2d at 970.

> The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come into this country, and to have its declared policy in that regard enforced exclusively though executive officers without judicial intervention is settled by our previous adjudications. *Id.* at 971 (quoting *Lem Moon Sing*, 158 U.S. at 547).

---

[5] The State Department appears to have contemplated the possibility of such a "cycle" and to have drafted their guidelines to limit its effect. Not only do the guidelines advise consular officers to limit "suspend and return" decisions to situations in which they become privy to *substantial* new evidence not considered by USCIS, but Note 4.1 to Part 42.43 of Chapter 9 of the FAM further provides, "In the rare case where the consular officer irreconcilably disagrees with the [USCIS] decision to uphold the validity of the petition [i.e. reaffirmation]... the consular officer shall send the entire case to the [State] Department for review and discussion with [USCIS]/HQ." This mechanism would seem to provide for those rare instances when consular officers are inclined to "suspend and return" more than once.

7

Regulations governing consular visa actions are certainly no more reviewable than consular visa actions themselves. *See Galvan v. Press*, 347 U.S. 522 (1954) ("[T]hat the formulation of [policies pertaining to the entry of aliens and their right to remain here] is entrusted exclusively to Congress has become about as firmly embedded in the legislative and judicial tissues of our body politic as any aspect of our government.").

In sum, the consular actions at issue here are all well within the Consulate's zone of discretion, and thus nonreviewable pursuant to the doctrine of consular nonreviewability. Plaintiffs cannot allege that the actions taken were per se outside the bounds of the authority granted consular officers; it is clear that a consular officer may decide not to issue a visa and to return the underlying petition to USCIS on the reasoned belief that the marriage between petitioner and beneficiary is a sham. The Consulate appears to have acted within its discretion. Moreover, as discussed above, even if the Court were willing to tread so far as to require strict compliance with State Department guidelines governing the discretionary decisions of consular officers, it is not clear that the result in this case would be any different or more favorable to Plaintiffs.

**CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss Plaintiffs' case is hereby granted.

**IT IS SO ORDERED.**

Dated: July 17, 2006

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT